UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL CELESTINE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1847** |
| **N. BURL CAIN, WARDEN** | **SECTION "N"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.     Factual and Procedural Background**

The petitioner, Michael Celestine ("Celestine"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On May 21, 1998, Celestine was indicted by a grand jury in Orleans Parish with the first degree murder of Duntez Dawson.[3]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 2 of 12, Indictment, 5/21/98.

The record reflects that, on April 8, 1998, Antoinette Ruffin ("Ruffin"), Celestine's girlfriend, drove to the Winn Dixie Supermarket on Almonaster Boulevard to buy groceries.[4] When she exited her vehicle, she noticed a group of young men standing on the corner looking in her direction. She initially thought they were admiring her, but she later concluded that they were admiring her vehicle. Ruffin further testified that, when she completed her grocery shopping, she returned to the parking lot and discovered that her vehicle was gone. Ruffin realized that the men on the corner also were gone. Celestine purchased the blue and white Cutlass that Ruffin had been driving, so she called to tell him the car had been stolen. Ruffin also told Celestine that she suspected that the young men who had been admiring the car had stolen it.

Later that day, Damon Webster, Duntez Dawson, and Jonathan Touissaint were standing around and talking to the owner of an auto body shop in Webster's neighborhood. They noticed Celestine standing on the opposite side of the street staring at them. Webster and his friends returned to his vehicle and drove away. Celestine followed them in a blue Mustang. Webster lived in the neighborhood, so he drove home. After Webster parked his car, Celestine drove along side of his vehicle, rolled down the driver's side window, produced a gun, and started shooting. Dawson was the first to be shot and was killed. Webster was exiting the vehicle at the time and was shot in the abdomen. Webster pulled Touissaint from the backseat and covered him with his body. As they lay on the ground, Celestine continued to shoot at them. Before the shooting began, Webster saw the gun Celestine used, and it was an AK 47. When Celestine drove away, Webster crossed the

---

[4] The facts of the case were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Celestine*, 811 So.2d 44, 45-47 (La. App. 4th Cir. 2002); St. Rec. Vol. 9 of 12, 4th Cir. Opinion, 2000-KA-2713, pp. 2-4, 2/13/02.

street and sat on the front porch of his house. While in the hospital, Webster was shown a photographic line-up, from which he identified Celestine as the person responsible for shooting him.

Sarah Ford, a bystander, heard the gunshots as she exited Rachel's corner store. Ford did not see the shooting, but she did see Celestine drive by in a blue two door Mustang. On the day of the shooting, Ford gave a statement to the police, and she was later shown a photographic line-up from which she chose Celestine as the person she saw driving the blue Mustang.

Detective Ricky Hunter of the New Orleans Police Department was the lead detective on the case. When he arrived at the scene, Webster was being taken to the hospital. Detective Hunter requested a crime scene technician, who photographed the scene. The technician also made a diagram of the scene to indicate where evidence was found. From the statement given by Ford, Detective Hunter was able to broadcast a description of the vehicle driven by the shooter on the same day of the shooting. He later was able to develop Celestine as a suspect in the shooting. He developed a photographic line-up, which he showed to Webster and Ford.

After the identification by Webster, Detective Hunter applied for an arrest warrant and a search warrant. The day after the warrants were obtained, Detective Hunter along with other officers executed them in the early morning hours. When the officers arrived at Celestine's home, they found him, his mother, his girlfriend, and his little brother asleep. The police took Celestine, his mother, and his girlfriend into custody.

Celestine was transported to the Fifth District police station where he was read his rights. Later at the station, Celestine was read his rights again, and he gave a statement to Detective Patrick Young. He also signed a rights of arrestee form. Celestine's statement was audio recorded and transcribed.

Before Celestine was transported to jail, he was allowed to briefly visit with his mother and girlfriend, who had been released from custody. Detective Hunter heard the conversation. When Celestine's mother offered him words of encouragement by saying, "I know you didn't kill anybody and we can get through this," Celestine responded to her by saying, "but I did kill that man momma."

Dr. William Newman, III, a professor of pathology at LSU School of Medicine and contract pathologist for the Orleans Parish Coroner's Office, performed the autopsy on Dawson. He observed that Dawson had gunshot wounds to the right arm, interior neck, and the base of his skull. The gunshot wound to the head definitely was fatal. During the autopsy, Dr. Newman removed small fragments of metal from Dawson's chest cavity. The bullet that injured his right arm traveled into his chest causing damage to his lung. Dr. Newman indicated that fragments of bullets are usually found when a high caliber weapon like an AK 47 is used.

Kenneth Leary, a firearms examiner with the New Orleans Police Department, identified a copper bullet jacket removed from Webster as a 7.62 mm by 39 mm, which is the ammunition for an S.K.S. also known as an AK 47. Officer Leary was unable to identify the caliber of a second copper jacket fragment removed from Webster. He was unable to identify other bullet fragments removed from Dawson's body, because they contained no striations or markings from the gun used to fire it, and because the weapon used to fire them had not been recovered.

Celestine was tried before a jury on July 17 through 19, 2000, and was found guilty as charged of first degree murder.[5] At the sentencing phase on July 20, 2000, the jury was unable to

---

[5]St. Rec. Vol. 5 of 12, Trial Minutes (2 pages), 7/17/00; Trial Minutes (5 pages), 7/18/00; Trial Minutes, 7/19/00; St. Rec. Vol. 4 of 12, Jury's Verdict, 7/19/00; St. Rec. Vol. 9 of 12, Trial Transcript, 7/17-19/00; Trial Transcript, 7/19/00.

reach a verdict on the death penalty.[6] At a hearing held on August 24, 2000, the Trial Court denied Celestine's motion for new trial, and sentenced him to life imprisonment without benefit of parole, probation, or suspension of sentence.[7]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Celestine's raised three assignments of error:[8] (1) the evidence was insufficient, because the State failed to disprove self-defense; (2) the Trial Court erred in failing to grant a mistrial when the State introduced false testimony; and (3) the Trial Court erred in failing to grant the motion for a new trial based on the fact that an empaneled juror failed to disclose that he knew the victim's family. On February 13, 2002, the Louisiana Fourth Circuit affirmed Celestine's conviction and sentence finding that the first and third claims were without merit.[9] The Court also found that the second claim, regarding the mistrial, was procedurally defaulted for lack of a contemporaneous objection under La. Code Crim. P. art. 841, and alternatively was without merit.

On April 25, 2003, the Louisiana Supreme Court denied Celestine's related writ application without stated reasons.[10] Celestine's conviction became final 90 days later, July 24, 2003, when he did not file a writ of certiorari with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[6]St. Rec. Vol. 5 of 12, Trial Minutes (3 pages), 7/20/00.

[7]St. Rec. Vol. 5 of 12, Sentencing Minutes, 8/24/00; St. Rec. Vol. 9 of 12, Sentencing Transcript, 8/24/00.

[8]St. Rec. Vol. 9 of 12, Appeal Brief, 2000-KA-2713, 5/14/01.

[9]*State v. Celestine*, 811 So.2d at 44; St. Rec. Vol. 9 of 12, 4th Cir. Opinion, 2000-KA-2713, 2/13/02.

[10]*State v. Celestine*, 842 So.2d 391 (La. 2003); St. Rec. Vol. 10 of 12, La. S. Ct. Order, 2002-KO-1309, 4/25/03; La. S. Ct. Writ Application, 02-KO-1309, 5/10/02 (postmarked 3/8/02, dated 3/5/02); St. Rec. Vol. 1 of 12, La. S. Ct. Letter, 2002-KO-1309, 5/10/02.

## II. State Post-Conviction Proceedings

Almost two years later, on May 6, 2005, Celestine submitted an application for post-conviction relief to the Trial Court alleging the following grounds for relief:[11] (1) the Trial Court lacked subject matter jurisdiction based on the unconstitutionality of La. Code Crim. P. art. 413(C) under which the grand jury was selected; (2) La. Code Crim. P. art. 413 allowed for discriminatory selection of grand jury forepersons; and (3) he was denied effective assistance of counsel for failure to move to quash the indictment based on the discriminatory grand jury selection process. His counsel also filed a memorandum in support of the application in which he incorporated those claims with others:[12] (1) the State failed to produce exculpatory evidence and suppressed Ford's recorded and transcribed pretrial statement to police; (2) Celestine's taped confession was inadmissible and should not have been admitted into evidence or heard by the jury, because it was not freely and voluntarily made where it was induced and coerced by improper influence and direct or implied promises; (3) he received ineffective assistance of counsel where trial counsel failed to obtain a ruling on the motion to quash the murder statute; (4) he was denied effective assistance of counsel where counsel failed to file a motion to quash the indictment on the ground that he was indicted by a grand jury selected in a discriminatory manner; and (5) he was denied effective assistance of appellate counsel where counsel failed to obtain a complete record of the trial depriving him of his right to full judicial review.

---

[11]St. Rec. Vol. 11 of 12, Memorandum in Support, dated 5/9/05.

[12]St. Rec. Vol. 11 of 12, Uniform Application for Post-Conviction Relief, dated 5/6/05.

After an evidentiary hearing on the claims raised, the Trial Court denied relief on January 31, 2007, finding that claims one, four and five were without merit.[13] The Court also found claims two and three to be procedurally defaulted under La. Code Crim. P. art. 930.4 as repetitive of matters already addressed by the state courts.

On April 4, 2007, Celestine's counsel filed a writ application with the Louisiana Fourth Circuit seeking review of that order.[14] The Court denied the application on May 15, 2007, without stated reasons.[15]

Celestine's counsel filed a writ application with the Louisiana Supreme Court on June 15, 2007, seeking review of the appellate court's order.[16] The Court denied the application without stated reasons on March 24, 2008.[17]

## III.  Federal Petition

On September 1, 2011, the clerk of this Court filed Celestine's petition for federal habeas corpus relief in which he raised the following grounds for relief:[18] (1) the State failed to produce exculpatory evidence of Ford's prior recorded statement; (2) the verdict was obtained as a result of juror misconduct; (3) his taped confession was inadmissible because it was not freely and voluntarily made; (4) he was denied effective assistance of appellate counsel when counsel failed to obtain a

---

[13] St. Rec. Vol. 1 of 12, Minute Entry, 8/17/05; Hearing Minutes, 12/1/06; Minute Entry, 1/31/07; St. Rec. Vol. 11 of 12, Post-Conviction Hearing Transcript, 12/1/06; Ruling Transcript, 1/31/07; St. Rec. Vol. 3 of 12, State's Response, illegible file date.

[14] St. Rec. Vol. 11 of 12, 4th Cir. Writ Application, 2007-K-0419, 4/4/07; Notice of Intent, 1/31/07; Trial Court Order, 1/31/07; Motion for 30 Day Extension, 3/2/07; Trial Court Order, 3/2/07 (granted to 4/4/07).

[15] St. Rec. Vol. 11 of 12, 4th Cir Order, 2007-K-0419, 5/15/07.

[16] St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 07-KP-1262, 6/15/07.

[17] *State v. Celestine*, 977 So.2d 949 (La. 2008); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2007-KP-1262, 3/24/08.

[18] Rec. Doc. No. 3.

complete record for appeal; (5) improper admission of evidence where the State introduced false testimony; (6) he was denied effective assistance of counsel where counsel failed to obtain a ruling on the motion to quash the murder statute; and (7) he was denied effective assistance of counsel where counsel failed to file a motion to quash the indictment based on a discriminatory grand jury selection process.

In its opposition response, the State argues that the petition was untimely filed and should be dismissed as time barred.[19]

## IV. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which is deemed filed in this court under the federal mailbox rule on July 8, 2011.[21] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not

---

[19]Rec. Doc. No. 17.

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Celestine's federal habeas petition on September 1, 2011, when the filing fee was paid. Celestine failed to date any of his signatures in the package of documents. The pauper certification submitted with his federal petition is dated July 8, 2011. This original package of documents also was postmarked to the Court on July 21, 2011. The certification date of July 8, 2011, is considered to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Celestine did not timely file his federal petition. For the reasons below, the Court agrees and finds that Celestine's federal petition was not timely filed under the AEDPA.

## V. Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[22] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above, Celestine's conviction was final on July 24, 2003.[23] Under the plain language of § 2244, Celestine had one year, or until Monday, July 26, 2004,[24] to file a timely federal application for habeas corpus relief, and he failed to do so. Thus, literal application of the statute would bar Celestine's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

---

[22]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.
28 U.S.C. § 2244(d) (2006).

[23]*See* fn. 10, *supra*.

[24]The one year fell on Saturday, July 24, 2004, leaving the deadline to fall on the following business day, Monday, July 26, 2004.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral

review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In the instant case, Celestine's conviction was final on July 24, 2003. The AEDPA filing period began to run the next day, on July 25, 2003, and did so for 365 days, until Monday, July 26, 2004, when it expired. Celestine had no properly filed state post-conviction or other collateral review pending during that time period. His only such filing was not made until May 6, 2005, when he filed his only state application for post-conviction relief. This was after the AEDPA grace filing period expired which does not afford him any tolling.[25] *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). His federal petition is untimely filed.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling

---

[25] The Court notes that, although the filing period under the AEDPA is shorter than that for post-conviction relief under state law, any such conflict does not render the AEDPA unconstitutional and, therefore, does not provide a basis for habeas corpus relief or equitable tolling. *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see Ellis v. Martin*, 202 F.3d 281, 1999 WL 1101241 at *3 (10th Cir. Dec. 6, 1999) (Table, Text in Westlaw).

was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, Celestine has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.[26] This doctrine does not apply here.

Celestine's federal petition is deemed filed on July 8, 2011, under the mailbox rule, which is almost seven years after the AEDPA filing period is deemed to have expired on Monday, July 26,

---

[26]The Court also notes that Celestine's lack of diligence is further demonstrated by the fact that he waited over three years after completing his state post-conviction relief before presenting this federal petition to the Court.

2004. Therefore, Celestine's federal petition was untimely filed and must be dismissed for that reason.

## VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Michael Celestine's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[27]

New Orleans, Louisiana, this 7th day of March, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[27]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.